SELBY v. The ELIZABETH ENGLISH. See Cases Nos. 4,359 and 4,360.

SELBY (ROBERTSON v.). See Case No. 11,929.

SELBY (TALBOT v.). See Case No. 13,729.

SELBY (WAY v.). See Case No. 17,302.

## Case No. 12,637.

### Ex parte SELDEN.

[See Case No. 12,638.]

## Case No. 12,638.

### Ex parte SELDEN.

[6 Pittsb. Leg. J. 18; 3 App. Com'r Pat. 457.]

Circuit Court, District of Columbia. April 3, 1861.

PATENTS—APPEAL FROM COMMISSIONER—DIVISIONS—REISSUE—HARVESTERS.

[1. On an application for a reissue and division of a patent under act of March 3, 1837 (5 Stat. 191), the divisions, for the purposes of an appeal, are to be considered as a whole, and not as separate cases.]

[2. On a surrender and reissue, the patentee has a right to a patent for a division or separation of each essential part in combination with the other parts of the same invention in which it was connected.]

[3. The claims of Selden, as assignee of McNamara, in his application for a reissue and division of his patent for improvements in harvesters, held valid and not anticipated by prior inventions, and the application erroneously rejected.]

Appeal by G. M. Selden, assignee of D. S. McNamara, from the decision of the commissioner of patents refusing to grant his application for a reissue and division of his patent of Sept. 28, 1858, for improvements in harvesters.

MORSELL, Circuit Judge. The commissioner has raised the preliminary questions, "that the appeal is not properly taken;" that the application for reissues on this patent are four in number, and embrace twenty six clauses of claims that make a series of combinations which include many parts of the machine not previously embraced in the claim, &c.; that the application is made in the name of the assignee of the inventor. The commissioner thinks that the patent law contemplated that each case presented to the office for its consideration must be treated as a substantive application; and that each case appealed to one of the judges of the circuit court, must be presented as a substantive appeal. The commissioner assigns several reasons for his opinion: "1st. Because the law which allows the division of an application for a reissue provides that each additional division of a reissue shall pay the sum of thirty dollars for each additional patent (section 5, Act March 3, 1837). 2nd. Each reissued patent is called and becomes a new patent, and this designation is applicable to every decision, because it establishes rights not before secured by patent protection. 3rd. Each division presents substantive claims, requiring a separate consideration and an independent examination in the office; the correspondence connected with it being necessarily isolated, and the references distinct; as much so in all respects as any other application for a patent. 4th. There is not a syllable in the patent law which authorizes the office to embrace two separate applications involving different and separate questions for adjudication in one appeal, to the judges of the circuit court. 5th. The fee required to be paid is substantive, and is required to be paid in each case upon which an appeal from the decision of the commissioner is taken. And, lastly, because, as in the present case, the reasons of appeal in one case cannot be regarded as applicable to the action of the office in each of the other cases."

The substance of these preliminary objections may be considered as embraced in these positions: That the petition in this case to reissue the original patent by a division of the same into four parts must be considered as four distinct original substantive cases and applications, and therefore liable to the pre-requisite payment of $25 each case for the fee. Secondly. That the applicant has no right to impose such extra labor upon the office and the judge. As to the latter objection, it certainly would have much weight, if it could be so considered by any fair construction of the law on the subject; but if not, as we have taken our offices cum onere, we must submit to it until the law becomes changed. To ascertain the true nature of the subject, and what the law is, I shall refer to the different statutes. The first, as to the divisions, is the act of 1836. Section 13 [5 Stat. 122] provides that, upon a surrender by the patentee of his patent, and the payment of the further duty (paid upon the original application) of $15, the commissioner is to cause a new patent to be issued for the same invention for the residue of the period then unexpired for which the original patent was granted, in accordance with the patentee's corrected description and specification; and in case of his death or any assignment by him made of the original patent, a similar right should vest in his executors, adminis-

trators, or assigns. Under this act it is true but one reissue patent was allowed; but for the purpose of explanation and correction it is presumed that the party would have had the same right in his specification of division of the subject, and statement of his particular claims, as he now has. Yet no one could suppose that the commissioner or the judge could have considered it more than one application or case. The "case" then is, that application which embraces the whole matter, however it may become afterwards divided into parts, unless the law declares it to be otherwise. The next act on the subject is the act of 1837 (section 5), to this effect: "That whenever a patent shall be returned for correction and reissue under the thirteenth section of the act to which this is additional, and the patentee should desire several patents to be issued for separate and distinct parts of the thing patented, he shall first pay in manner and in addition to the sum provided by that act the sum of $30 for each additional patent so to be issued." It will be perceived that the practice under the act of 1836 was a very short one, as the present act followed in about twelve months. There might have been urgent reasons arising from the evils in the practice under the first act, such as that the invention contained in the first original patent might have covered many parts through which the obscurity running, each with its combination, would require corrections and explanations. This it would be impracticable to do satisfactorily unless by pursuing the course which has been done in this case, —by division.

The provision establishing the right of appeal from the decisions of the commissioner, in the case of an application for a reissue, is found in section 8 of the act of 1837, to this effect: "That whenever a patent shall be returned for correction and reissue the specification of claim annexed to every such patent shall be subject to revision and restriction in the same manner as are original applications for patents. The commissioner shall not add any such improvement to the patent in the one case, nor grant the reissue in the other case, until the applicant shall have entered a disclaimer, or altered his specification of claim in accordance with the decision of the commissioner, and, in all such cases, the applicant if dissatisfied with such decision shall have the same remedy and be entitled to the same privileges and proceeding as are provided by law, in the case of original applications for patents." The original act is the act of 1836 (chapter 357, § 7), which allows the inventor an appeal to a board of examiners: "Provided, however, that before a board shall be instituted, in any such case, the appellant shall pay to the credit of the treasury as provided in the ninth section of this act the sum of twenty five dollars; and each of said persons so appointed shall be entitled to re-

ceive for his services in each case, a sum not exceeding ten dollars, to be determined and paid by the commissioner out of any moneys in his hands," &c. Just before in the same section it is provided: "But if the applicant in such case (a newly discovered invention) shall persist in his claims for a patent with or without any alterations of his specification he shall be required to make oath," &c. By the act of 1839 (chapter 88, § 11 [5 Stat. 354]) the appeal is allowed to the chief-justice of the district of Columbia instead of the board of examiners, the applicant paying into the office to the credit of the patent fund $25, the judge to be paid $100 annually out of the patent fund in consideration of the duties therein imposed. The next and last act is that of August, 1852 [10 Stat. 75], which authorizes an appeal to either of the judges of the circuit court, in the second section of which the commissioner of patents is directed to pay to the judges, &c. the sum of $25 required to be paid by the appellant into the patent office by the 11th section of said act, on said appeal.

The foregoing contains a statement of all the statutes having any bearing immediately on the question involved in the position held by the commissioner, upon a careful consideration of which I am satisfied they do not sustain the theory adopted by him. That theory seems to be, that although there is but one petition setting forth the ground of the application to be for a reissue and division under the act of congress of 1837, each division is to be considered a separate case presented to the office for its consideration and liable as in the case of original substantive applications to pay the fee of $25 on an appeal taken.

First, "because the law imposes upon every additional division the sum of $30, for each additional patent." But this reason cannot be considered sound, because neither in terms or by inference has it any allusion to the provision for an appeal. The 8th section of the same law provides for that, which says "in all such cases," &c., and "as are provided by law in the case of original applications for patents." The term "case" is used in the same sense in both. Equally unsound is the inference drawn from the terms "a new patent," as used to designate or establish in every division "rights not before secured by patent protection." The law expressly declares that the patent so authorized to be issued shall be for a part of the old invention. The claim in the new patent is not of any new invention, but of the old invention more perfectly described and ascertained. See Curt. Pat. § 181, note 2. The "case" is that which is set forth as the ground of the application in the incipient stages of it and includes or embraces the whole and not a part only, each part of which is only a part of one whole, and so it must be here considered, notwithstanding the after effect produced by re-issuing separate patents for each part. And such has been the invariable contemporaneous

practice both by the office and the judges ever since the passage of the law. This alone, unless grossly erroneous, ought to be considered as sufficient authority for overruling the objections by the commissioner.

The preliminary objections being overruled and all the original papers on the merits being duly laid before me, together with the argument in writing by the counsel for the appellant, I proceed to consider the same. The reasons of appeal are so particularly noticed in the report of the commissioner, as to make it unnecessary to recite them. The substance of that report is that the original patent granted to D. S. McNamara, dated September 28, 1858, for improvements in mowing machines, was granted on two clauses which constituted the claim of the invention: One clause involved the mode of constructing the frame of a harvester, and the other involved the shoe combined with the frame. The assignee of the patent thus limited presents four divisions of this patent for reissue, and each one of these divisions has been separately examined and reported upon by the office.

The reasons of appeal noticed by the commissioner in his report are: 1st. The allegation of error in refusing the reissues when McNamara was the first inventor of all that is claimed by the appellant. 2nd. That there was error in giving so many references and in not pointing out their appositeness. And 3rd. That inasmuch as the reasons for the refusal of any of the claims were neither legal nor equitable there was error in not granting all he claimed in the several divisions. Division A. embraced fourteen clauses of claim of which the 1st, 2nd, 6th, 9th, 10th, 11th, and 12th, were allowed, and the remaining clauses were refused upon specific references. The 3rd clause was for no more nor less than a claim for a common truss or brace rod, and from its perfect familiarity as a strengthening device might very properly have been refused without a reference. The office however gave references in the letter of March 11, 1861, and those upon which this clause was rejected, were strictly apposite, as may be perceived at a glance at the drawings. The black line passing from a to a of the frame, in Adams and Clark's drawing being a truss rod.

This claim does not appear to be correctly stated by the commissioner. The claim is not for a common truss or brace rod. This may be old and would therefore justify the commissioner's opinion. But the claim as really made runs thus: "I also claim the combination of the truss rod c with the pieces c and e, substantially as and for the purposes set forth." The principles of patent law applicable to this part of the case have been declared repeatedly. It is not necessary that every ingredient or indeed that any one ingredient used by the patentee, in his invention should be new or unused, &c. The true question is "whether the combination of materials by the patentee is substantially new. Each of these ingredients may have been in the most extensive common

use, and some of them may have been used for matches (the invention in that patent) or combined with other materials for other purposes. But if they have never been combined together in the manner stated in the patent, but the combination is new, then I take it the invention in the combination is patentable." And so also as decided in the Case of Emery [1]: "The party will be entitled to a patent for such parts of his machine as are new, or for the result of such a combination of old parts as he shows is new and valuable." Now it must be admitted that this claim forms one of the essential parts of the original patent; and that the new patent asked for, therefore, and the specification on which it will issue, have relation to the original transaction. The application may be considered as attached to the original application. If so, the patent can in no respect be considered as independent of the first.

The surrender of the old patent was not for the purpose of opening the investigation de novo, and if not as to the whole, equally not so as to its parts. No such issue is intended to be authorized by either of the statutes. The only issue which they authorize is, has the defect been innocently occasioned and without any fraudulent or deceptive intention, and he is also directed to confine the party to the true intent of the original invention, certainly however not to deprive the party of his right to have a patent for a division or separation of each essential part in combination with the other parts of the same invention in which it was connected.

The untenable ground taken by the commissioner, that the new patent, establishes independent rights not before secured by patent protection "differing from the true principles which I have hereinbefore stated," has led to a course presenting a false issue and embarrassed this investigation with a most unreasonable number of drawings and models. I have however submitted myself to a laborious comparison of the references with rejected claims, and will endeavor to give a condensed result, using as my guide the principles I have stated in deciding the points arising in the case.

In addition to what I have already said with respect to the 3rd rejected claim in the Clarkson & Adams case, a rod is found extending from the rear part of the frame forward to an upright piece connected to the front of the frame. This is what is supposed to be the same thing as combining a truss rod shown in the McNamara machine. There are differences between the two in the position, and object and purpose. The reference is for the purpose of draught connection. That of McNamara, the rod extends in such a direction, as it respects the line of draught and the position of the finger beam, as to have a tendency to elevate the outer shoe above the ground when drawn up as shown in Fig. 5 of the drawing, whereby much friction is obviated. There is not only a substantial differ-

[1] [Case No. 4,444.]

ence in the position, but an entire difference in the functions of the two trusses.

As to the 4th clause which is suposed to resemble the Dunham machine. It has a truss rod, but the frame is rectangular and not of a wedge form as in the case of McNamara, an entirely different construction and the effect entirely different. In this instance also the claim is not simply for the truss rod, but with its combination. This claim also falls within the principles I have before stated.

The fifth claim. In this combination, the finger which supports the outer and tracker is not only kept in proper line laterally but the outer end thereof can be elevated as before stated to prevent undue friction of the shoe upon the ground. In case the finger beam sags down, by the aid of the truss rod it can be brought up in place again. I have examined this reference, but cannot perceive any such arrangement as stated in the claim. With respect to this reference, the commissioner says, "The rejected application of Adroms & Marcellus presents a precise anticipation of the fifth clause." This is a very general reference, and if my duty in revising could be satisfied, or fulfilled by the mere ipse dixit, of the commissioner I should have no reason to complain, but if on the other hand, he is bound by law to give such information and reference as may be useful in enabling me intelligibly to judge, then surely the specific features, or arrangement of parts should be stated showing the grounds of his decision. A practical analogy in all similar cases shows this to be indispensably required to give any worth or weight to the references.

Seventh. The commissioner says: "The seventh clause being but a claim to a bent axle, is anticipated in the same reference as also in that of W. A. Woods' patent, December 29. 1857." This is incorrectly stated also. The knee is not claimed in itself but only in combination, as will appear by reading it. In the McNamara machine the stationary journal piece is cast with projections to fit against the sides of both of the cross pieces, B C, of the main frame, while it also rests on the top of both. By this form of construction, the frame is rendered strong and firm, while at the same time the curve or knee to which the wheel is attached enables a large wheel to be used. These elements are claimed in combination. The references show the knee, but according to the principles stated this is not enough. The objection is therefore overruled.

Eighth. As to this the commissioner says: "The equivalent of the 8th clause of the claim is manifest in the patent of S. S. Allen, dated Nov. 8, 1853, if indeed as a device for the throwing the cutter bar in and out of action the invention now claimed is not identical with that of the references." This objection also presents a part of the combination only and is therefore within the same rule as the 7th, and so of the 13th and 14th, and must therefore be overruled.

The commissioner, proceeding with his re-port, further says, case B of these reissues, case C and case D embrace many clauses of claim; some of which were allowed, whilst the others were rejected, and whenever a clause was rejected specific references were given with all the precision usual in the conduct of the business of the office.

In the division No. 2 the amended specification presents three claims which were rejected by the commissioner. These claims are for the hinged tongue in its various combined arrangements. As anticipating these claims five references were made. These have been carefully examined and compared, and in none of them can I find a hinged tongue having a right angled lever fulcrumed to the rear side thereof, or like the arrangement of a hinged tongue or draught beam as described in the amended specification containing said claims. It can hardly be necessary for me to refer to authorities to show the patentability of a new combination of particular forms and arrrangement of structure to accomplish a given end. I will however state one among several relied on by the appellant, being in manuscript, I suppose, and not generally known. It is a case decided by Judge Sprague,—Many v. Sizer [Case No. 9,056]. He says: "It is contended by the defendant that all the parts going to constitute the plaintiff's wheel were known before and developed in prior wheels. But if the patentee borrowed the idea of the different parts which go to constitute his wheel, and for the first time brought them together into one whole, and that whole is materially different from any whole that existed before, then he is the original and first inventor." The objection must be overruled. And for like reasons the objections in No. 3 must be also overruled. The same answer substantially must be given to the objections to the rejected amended claims in division No. 4 and the same overruled.

Upon the foregoing grounds stated in this opinion I think the commissioner erred in refusing to admit the said claims hereinbefore particularly stated, and that his decisions rejecting said claims ought and the same are hereby reversed and annulled, and it is ordered that patents be granted as prayed.