## *In re* GRIFFIN.

*(City Court of New York, General Term.* May 7, 1888.)

CONTEMPT—WHAT CONSTITUTES—LETTER ACCUSING JUDGE OF IMPROPER CONDUCT.
Writing and mailing, under seal, a letter to a judge, characterizing a decision as unjust, and charging him with an endeavor to conceal the facts from the appellate court, and threatening, in case of an adverse decision in another case, to lay the whole proceedings before the appellate court and the people, does not constitute contempt of court under Code Civil Proc. N. Y. § 8, providing that contempt of court shall consist of insolent behavior towards a court, committed during its sitting, or publication of a false or grossly inaccurate report of its proceedings.

Proceedings for contempt of court.

Section 8, Code Civil Proc., referred to in the opinion, is as follows: "A court of record has power to punish, for a criminal contempt, a person guilty of either of the following acts, and no others: (1) Disorderly, contemptuous, or insolent behavior, committed during its sitting, or in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due its authority. (2) Breach of the peace, noise, or other disturbance directly tending to interrupt its proceedings. (3) Willful disobedience to its lawful mandate. (4) Resistance willfully offered to its lawful mandate. (5) Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory. (6) Publication of a false or grossly inaccurate report of its proceedings. But a court cannot punish as a contempt the publication of a true, full, and fair report of a trial, argument, decision, or other proceeding therein."

Argued before McADAM, C. J., and McGOWN and PITSHKE, JJ.

*Donohue, Newcombe & Cardozo*, for Griffin.

PER CURIAM. Counsel should ever remember that they are officers of the court, and in duty bound to uphold its honor and dignity. The letter written by the respondent is not in keeping with this sense of professional ethics, and its language requires the strongest condemnation. It was aimed at the judicial integrity of Judge NEHRBAS, and was written with the evident design of influencing his future judicial action in the matter pending before him. The writer characterized the decision of the judge as "unjust," and as "endeavoring to conceal" from the appellate court the facts upon which he based his order. This is a serious charge to make, but the writer went further. In reference to the matter then pending and undecided, he said he anticipated an adverse decision, and wound up with the following threat: "If this is done, I shall feel obliged, in interest to my client and to justice, not only to lay the whole proceedings before the appellate court, but also before the public." Then follow these words: "I certainly shall not submit to such gross injustice;" and then this admonition: "Hoping you will remember the matter, I remain yours, etc."

It will be observed that the letter did not stop at scandalizing what had been done; it conveyed a direct threat of certain unpleasant consequences if another branch of the same matter, then pending, was decided against the writer. That such a communication is unprofessional and wholly unauthorized seems too clear to require discussion. Whether the author can be punished as for a criminal contempt is the question which requires consideration. The court in *Charlton's Case*, 2 Mylne & C. 339, said: "Every writing, letter, or publication which has for its object to divert the course of justice is a

contempt of the court," and added: "It would be strange indeed if the judges
of the court were the only persons not protected from libels, writings, and pro-
ceedings, the direct object of which is to pervert the course of justice. Every
insult offered to a judge, in the exercise of the duties of his office, is a con-
tempt; but when the writing or publication proceeds further, and when, not
by inference, but by plain and direct language, a threat is used, the object of
which is to induce a judicial officer to depart from the course of his duty, and
to adopt a course he would not otherwise pursue, it is a contempt of the very
highest order." In *Harrison* v. *State*, 35 Ark. 458, a fine of $50, imposed
upon attorneys for inserting in an affidavit for a new trial that the judge be-
fore whom the action was tried was "so prejudiced against the defendant that
he did not give him a fair and impartial trial," was affirmed. In that case the
court said: "The duties between the bench and bar are reciprocal, and attor-
neys ought to remember that any unnecessary insult to the judge tends to
degrade, in public estimation, the tribunal from which they themselves de-
rive the dignity and respect due to their own profession;" and added: "It
will be a sad day for our state when the people have the authority of attor-
neys for saying that they cannot resort to the courts for justice." In *Re
Pryor*, 18 Kan. 72, the attorney wrote to a judge in a matter still pending
before him: "The ruling you have made is directly contrary to every prin-
ciple of law, and everybody knows it, I believe;" and that it is "my desire
that no such decision shall stand unreversed in any court I practice in;" and
it was held that the letter was insulting and disrespectful, and constituted a
contempt of court. The court in the case last cited said even "a justice of
the peace, before whom the most trifling matter is being litigated, is entitled
to receive from every attorney in the case courteous and respectful treatment.
He is *pro hac vice* the representative of the law as fully as the chief justice
of the United States in the most important case depending before him."
These and numerous other cases sustain the common-law power of a court of
record to punish, as for a criminal contempt, acts such as are imputed to the
respondent herein. The Code of Civil Procedure, however, limits the power
of the court to punish for criminal contempt to persons guilty of the acts enu-
merated in section 8 of that enactment, and acts not therein specifically enu-
merated must be punished as misdemeanors, (*People* v. *Court*, 101 N. Y.
245, 4 N. E. Rep. 259;) or the guilty person, if an attorney, must be cited
before the supreme court, which has inherent power to discipline its officers,
independently of the common law and outside of the statutory doctrine of
contempt, (Weeks, Attys., § 80.) This power has been exercised for vari-
ous causes. *In re Percy*, 36 N. Y. 651; *Bradley* v. *Fisher*, 13 Wall. 335;
*State* v. *Holding*, 1 McCord, 379; *Perry* v. *State*, 3 G. Greene, 550; *Saxton*
v. *Stowell*, 11 Paige, 526; *Beene* v. *State*, 22 Ark. 149; *Ex parte Heyfron*, 7
How. (Miss.) 127; *Ex parte Secombe*, 19 How. 9. See, also, *Ex parte Burr*, 9
Wheat. 529; 6 Pittsb. Leg. J. 18; 2 Whart. Crim. Law, 344. The evident
design of the statute was to abolish summary punishment for constructive
contempts, leaving them to be redressed in some other form, for it seems to
have accomplished this object. The present charge does not fall within either
of the cases enumerated in section 8 of the Code provision, for the reason that
there was no publication of the letter, in a legal sense, and it was not deliv-
ered by the attorney in person during the sitting of the court. It was in-
closed in a sealed envelope and was mailed to the justice, and the contents
were presumably read only by the writer and the justice to whom it was di-
rected. For the reasons stated, the cases relating to publications scandaliz-
ing the courts have no application. The letter sent by the respondent is con-
temptuous and insulting, casts discredit on the administration of justice, and
should never have been written. The language used was not the hasty ut-
terance of an excited attorney, spoken in the heat of debate, but the deliberate
act of the writer, who, in the retirement of his office, penned the missile with

.his chosen phraseology, and leveled it at the official to whom it was addressed. It reached its destination, and the insulted officer turned it over to the court .at general term for its action. The letter, we are glad to say, did not prevent the justice from performing his full duty in the premises, did not inter- .rupt the proceedings of the court, and did not pervert or prevent the administration of justice in the matter pending. In fact, the letter has accomplished nothing save the giving of a little notoriety to the attorney, and that of an unsavory character, such as no reputable attorney will ever be eager to seek. It has exposed methods that meet disapproval, and will not bear repe- :tition.

Appellate tribunals are created for the sole purpose of correcting judicial ·errors, and the defeated attorney, if aggrieved, should seek redress by invoking their aid. This is lawyer-like and proper. If, however, the wrath of the .attorney is too exuberant to be retained until the appeal is heard, he may go to the nearest tavern and purge himself of it in a manner suited to his temper and the surroundings. Whether such an exhibition is in good taste, or .accomplishes any practical purpose, must, in the nature of things, be left to the moral sense and standard of ethics of the particular individual. He is not likely to be called upon in court to justify such a mode of ventilating fancied judicial injustice, and this circumstance may give license to such conduct. We have never heard of *dicta* that go further. But the attorney must not pollute the atmosphere of the court with billingsgate, or give vent to his wrath within the sacred halls of justice. If the attorney proceeded against had not acknowledged his misconduct, expressed contrition, and offered a ·complete apology for his act, we would have deemed it our duty to call the .attention of the supreme court at general term, in an official manner, to the facts before stated, to the end that the attorney might be disciplined for his misconduct, but, in view of the reparation offered, we will refrain from so doing in this instance, feeling and hoping that our severe condemnation of the offense charged may serve as an admonition that such acts cannot be tolerated, and will not bear repetition. The proceeding for contempt will therefore be discharged.