[Crim. No. 3132. In Bank.—May 14, 1928.]

In the Matter of RALPH ARNOLD, ALFRED F. ANDREWS and FRANK C. TRACY, on Citation for Contempt of Court.

R. M. J. Armstrong and Marshall B. Woodworth for Respondents.

THE COURT.—In an action entitled *Frank S. Boggs, Petitioner,* v. *Frank C. Jordan, as Secretary of State of the State of California, Respondent* [S. F. No. 12,911], *post,* p. 207 [267 Pac. 696], there was filed in this court on March 16, 1928, a petition for a writ of mandate to compel the respondent Secretary of State to disregard certain referendum certificates then on file in his office relative to an act of the legislature entitled "An act to amend section seventy-eight and to repeal section ninety of the Political Code, relating to the division of the state into legislative districts and defining and establishing such districts, and to repeal all acts in conflict with this act" (Stats. 1927, p. 1757), and to take no further action with respect to said referendum certificates or proceedings thereunder. An alternative writ of mandate and an order to show cause were thereupon issued by this court and were served upon the respondent Secretary of State. Said re-

spondent thereupon made answer and return, and the matter came on regularly for hearing before the court in bank on the third day of April, 1928, petitioner and respondent each being represented by respective counsel. At that time certain counsel, among them Henry E. Carter, Esq., sought and obtained permission to file briefs *amici curiae* for respondent. By agreement of all parties the cause was then ordered by the court to be submitted on briefs. No decision has yet been handed down in said cause, and the matter is now pending for consideration and determination by this court.

On April 12, 1928, there was handed to the clerk of this court a communication written by Ralph Arnold, reading in full as follows:

"Clift Hotel.

"San Francisco, April 12, 1928.

"The Clerk, Supreme Court of California.

"San Francisco, Calif.

"Dear Sir: Mr. Henry Carter of Los Angeles will file a brief with your Court tomorrow in reference to the validity of the petitions for the Referendum on the Reapportionment Measure now before the Court.

"This is to advise you that Mr. Carter in this proceeding represents the All Parties Reapportionment Committee of Los Angeles County, said committee in turn representing the Republican County Central Committee, the Democratic County Central Committee, the Prohibition, Socialist & Progressive organizations, the Los Angeles, Hollywood and other Chambers of Commerce and numerous other organizations and individuals in Los Angeles County, in all representing a majority of the votes cast at the last election on the reapportionment question.

"Please convey to the Court the information that the weight of the above citizens goes behind this brief.

"Yours very truly,

(Signed) "RALPH ARNOLD,

"Chairman, All Parties Reapportionment Executive Com. and Rep. Co. Central Com.

"My address is 639 So. Spring St.,

"Los Angeles, Calif."

The clerk placed the communication in the hands of the justices of this court.

° On the same date there was handed to the clerk of the court, with directions to hand the same to the members of the court, a communication purporting to be "on behalf of the Republican County Central Committee of San Francisco," signed by Alfred F. Andrews and Frank C. Tracy, chairman and secretary, respectively, of said Republican County Central Committee, in which said Alfred F. Andrews and Frank C. Tracy, on behalf of said county central committee, protested "against the action Boggs vs. Jordan, Secretary of State," said communication reading in full as follows:

"Republican County Central Committee,
"City and County of San Francisco.
"April 12, 1928.
"To the Members of the Supreme Court,
"State of California,
"State Building,
"San Francisco, Calif.
"Honorable Sirs:
Re: Boggs vs. Jordan.

"On behalf of the Republican County Central Committee of San Francisco we file herewith protest against the action *Boggs* vs. *Jordan,* Secretary of State, to prevent from becoming effective, the duly executed referendum of the electorate of the state against the so-called Farm Bloc Reapportionment Act.

"We feel that this question involves fundamental principles of initiative government and that the clear will of the people will be defeated should the action of the proponents in this case prevail. Not only will the express desires of the qualified number of electors who signed the referendum petition be defeated, but the whole principle of legislation by initiation from the people will be given a serious blow.

"This question involves all petitions by electors. It involves the referendum, the initiative and the recall. It also involves the practice of obtaining signatures to place candidates upon the ballot. Who can say if there is a public official in the state whose nominating petition signatures were of a sufficiency as regards technical requirements as justify his holding present office; and shall we go behind the record of their various elections if we now find that some of their petitions may have vulnerable technical validity?

"The referendum against the Reapportionment Act represents a true exercise of the right of review by the electorate of an action of the legislature, within the constitutional guarantees to citizenship. We feel that because this is so fundamental, and that it does constitute the people's right of initiative review, interpretations of the act and all of its provisions should be constructively liberal.

"We feel that the signatures obtained for the referendum against the Reapportionment Act are not only valid but authentic. As we understand it, the authenticity of the signatures is not questioned as much as their validity; i. e., having to do with whether the date was written in by the elector or by the solicitor, and other technicalities. However, though we feel that all of the signatures are both authentic and valid, nevertheless, if there were a few in which the validity might be questioned because of a technicality, we believe that the intention of the elector in signing the referendum is the principal, the most important, and a most conclusive feature to consider. Clearly, the electors signing this petition *intended* to referendum the act, though in making this statement we by no means acknowledge that there were any quantity of such signatures with these technical omissions, or that their number, if they existed, substantially affected the validity of the petitions.

"We take the view that any objection to technical circumstances surrounding the signatures should have been made to the County Clerks, or Registrar of Voters, who accepted for filing, the petitions. Clearly, that is the place, and the only place, for the lodging of protest as to the sufficiency of the signatures. We feel that it is an imposition upon the electorate of the state, the administrative office of the state, and upon the Supreme Court to inject this protest at this tardy time. Furthermore, we consider that the proponents of this action have not acted in good faith in permitting this lapse of time and opportunity in making their protest, and that they are striking at the whole question of initiative action, which is a much bigger and far more fundamental governmental question than the one involved herein.

"We trust that the members of your Honorable body will see the justice of the claims we make above, and that you will recognize the legal soundness of the defense which will have already been filed with you by the Attorney-General,

and that you will deny the mandate which is being sought by the proponents.

"Yours very truly,
"REPUBLICAN COUNTY CENTRAL COMMITTEE,
"City and County of San Francisco.
"Chairman (Signed) ALFRED F. ANDREWS.
"Secretary (Signed) FRANK C. TRACY."

The manifest purpose of preparing the foregoing communications, and each of them, and sending the same, at the particular time mentioned, to the court in which this cause is pending, was and is to prejudice the minds of the members of the court, and to influence the consideration of the court against the cause of the petitioner in the action *Boggs* v. *Jordan, Secretary of State, supra,* and to influence the views of the members of the court, and to procure, if possible, a decision of the matter contrary to the contentions of the petitioner.

The said Ralph Arnold, Alfred F. Andrews, and Frank C. Tracy are not, nor is either of them, an attorney at law, and are not, nor is either of them, a party to the action *Boggs* v. *Jordan, supra.*

The sending of such communications, under the circumstances, to the court which still has before it the duty of exercising judicial functions in the case is an unlawful interference with the proceedings of the court and an attempt to obstruct the course of justice, and, therefore, a contempt of court.

Citation having issued, due return and appearance having been made, and no good cause being shown why they and each of them should not be found in contempt and punished therefor, it is adjudged by the court that the said Ralph Arnold, Alfred F. Andrews, and Frank C. Tracy are, and each of them is, guilty of contempt of this court, as specified in the citation, and that as punishment therefor the said Ralph Arnold, Alfred F. Andrews, and Frank C. Tracy each pay a fine of five hundred dollars, and that in default thereof they, and each of them, stand committed to the sheriff of the city and county of San Francisco, and, until such fine is paid, be imprisoned in the county jail of such city and county at the rate of one day's imprisonment for every two dollars of such fine.

Let a commitment issue.

LANGDON, J., Dissenting.—I dissent. I find myself unable to concur in the order fixing the punishment just made by the court majority. I am of the opinion that in this matter the penalty should be either the maximum provided by law—five hundred dollars fine and five days' imprisonment in the county jail—or, it should consist of an admonition or, at most, a reprimand. If this unwarranted interference with the due administration of justice were prompted by selfish or corrupt motives, or was knowingly and designedly intended, by secret communications, to exert an undue and unfair influence on the court, nothing less than the maximum penalty would be adequate. On the other hand, if, with no improper motives, but through ignorance of court procedure, with no realization of the improprieties of the act complained of, these defendants openly blundered into this embarrassing situation, neither the dignity nor the integrity of this court, nor the ends of justice, require more than an admonition, or, at most, a reprimand, to these defendants.

Because I am satisfied that the defendants, none of whom is a lawyer, did not realize the impropriety of their acts and were actuated by no improper motive, I think the punishment is excessive and unwarranted under the circumstances of this case; that an admonition, or, at most, a reprimand, would be amply sufficient.