[L. A. No. 12324. In Bank.—July 15, 1930.]

D. T. BLODGETT, Petitioner, v. SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent.

D. T. Blodgett, *in pro. per.*

Schauer, Ryon & Goux, Harrison Ryon, Heaney, Price & Postel and Atwell Westwick for Respondent.

RICHARDS, J.—The petitioner herein applied for a writ of review, whereby he sought to have a certain order of the Superior Court in and for the County of Santa Barbara reviewed and annulled. The said order relates to proceedings had in said court resulting in the attempted punishment of the petitioner for contempt of said court by virtue thereof and of the terms of said order. Before proceeding to a discussion of the questions involved in this proceeding upon the merits thereof, there are certain preliminary matters to be disposed of. The first of these relates to a document forwarded by mail by the petitioner herein, directed to this court and each of the justices thereof, and which was received by the court and its membership on June 3, 1930, and wherein it was asserted by the petitioner "that it is probable by reason of the bias and prejudice of Justices Waste, Seawell, Richards, Shenk, Curtis, Preston and Langdon of the Supreme Court of the State of California, a fair and impartial trial of the above entitled proceeding cannot be obtained with either one of the seven justices participating as justice of said court at a hearing or determination of said proceeding." This document, which is verified by the petitioner, then proceeds to set forth the reasons which form the foundation for his aforesaid belief and assertion. These reasons, and the petitioner's statement thereof, have reference to certain orders and directions of this court, as shown in the minutes and orders thereof in a certain action entitled "Ida Blodgett, plaintiff and appellant, v. Grace Sherwood Trumbull, defendant and respondent," formerly pending in this court and which, as shown by the minutes and orders thereof, are these: On May 7, 1929,

there was filed with the clerk of this court a written motion for leave to withdraw the appeal in said last-named action, which was signed by the plaintiff therein, and appeared together with notice of the hearing thereof to have been duly served upon counsel for the respondent in said action. This matter came on for hearing pursuant to such notice upon the next law and motion calendar of this court, and, being unopposed, was granted by an order made and entered on July 1, 1929, granting said motion and dismissing said appeal. On August 2, 1929, a *remittitur* was prepared and issued by a deputy clerk of this court purporting to set forth correctly the order of this court dismissing said appeal, but by a clerical misprision it was made to appear therein that it was the "respondent's" and not the "appellant's" motion to dismiss said appeal which had been thereby granted. This misprision the court has since corrected by a *nunc pro tunc* order so as to make the truth appear therein that it was the appellant's motion to withdraw said appeal which was granted by the terms of the court's aforesaid order. It is impossible to conceive how the present assertion of a petitioner herein that the members of this court are, or any of them is, disqualified to hear and determine the matter now before the court can find any foundation in the foregoing action of the court dismissing an appeal in another action to which this petitioner was not a party upon the written request and unopposed motion of the plaintiff and appellant therein.

The other ground upon which the petitioner herein bases his assertion of an existing disqualification on the part of the members of this court, and each of them, to hear and determine the instant proceeding is equally without foundation. The records of this court show that on or about May 21, 1930, Ida Blodgett, in the appeal above referred to, entitled Ida Blodgett, plaintiff and appellant, v. Grace Sherwood Trumbull, defendant and respondent, served and undertook to file with the clerk of this court a notice of motion "to advance the above entitled action." The clerk having ascertained from the minutes and files of this court the fact that the appeal in the action referred to in said notice of motion had nearly a year before the date thereof been dismissed upon the request and motion of the appellant herself, and that the court had thereby long since lost

jurisdiction of said appeal, refused to file the moving papers in said notice and motion, and immediately so informed the plaintiff and appellant therein. It is manifest that no claim of disqualification of the members, or any of them, of this court could, upon the aforesaid unavoidable action on the part of the clerk of this court, be based. The plaintiff's claim of disqualification of the several members of this court is not based upon any assertion of personal bias or prejudice other than that inferred from the foregoing state of the record, and the reasons for the petitioner's claim and assertion of the disqualification of the members of this court to hear and determine the instant proceeding, based upon such record, and being thereby shown to be utterly without foundation, it follows that the petitioner's said claim and assertion based solely thereon must, for the foregoing reasons, fail and be disregarded. Besides, as will hereafter appear, the petitioner herein has, subsequent to making his aforesaid claim of disqualification to act in this matter, moved this court for an order setting aside its former order for the submission thereof, and in so doing has not urged as a ground therefor any disqualification on the part of the court or the members thereof to make said order, or to hear and determine his own affirmative motion to set aside the same.

 The other preliminary matter to be disposed of consists in the motion on the part of said petitioner to set aside the submission of this proceeding for decision, the order for which submission having been made herein on June 16, 1930. The records of this court disclose that this proceeding was regularly upon the calendar of this court for hearing at the session thereof held in Los Angeles on June 3, 1930, all parties thereto having been duly notified of the time and place of such hearing; that the petitioner herein did not appear at such hearing, and the matters involved therein were upon such hearing continued for the filing of briefs until June 16, 1930; whereupon such briefs as the parties thereto desired to file having been filed, an order of submission was on said last-named date duly made. The petitioner herein has moved to set aside such submission "on the ground that petitioner has not had an adequate opportunity to be heard in support of the above entitled proceeding." Our records show that the petitioner himself

initiated this proceeding on December 1, 1929, before the District Court of Appeal in and for the Second Appellate District; that the matter was in due course assigned for hearing in and before Division One of said tribunal, which granted the writ asked for, and thereafter heard and submitted said cause for decision, and on March 20, 1930, rendered its decision therein in the petitioner's favor (Cal. App.) 286 Pac. 492; that a petition for rehearing was thereupon presented to said court; that the petitioner opposed the granting of the same with written arguments and briefs; that said petition for rehearing was by said court denied; that thereupon, and on or about April 30, 1930, the respondent herein applied for a hearing before this court; that the petitioner herein resisted said application with written arguments and briefs; that this court, on or about the fifteenth day of May, 1930, granted the respondent's petition and thereupon and by proper order placed said matter upon its regular Los Angeles calendar for hearing on June 3, 1930; that on May 27, 1930, the petitioner herein filed his points and authorities upon said hearing without objection to the date fixed for the hearing thereon and without any application for a postponement for any cause of the hearing thereon. On June 3d the petitioner presented his aforesaid claim and assertion as to the disqualification of the members of this court to hear and determine this matter, which we have hereinabove found and determined to be without merit. The petitioner's motion to set aside the submission of this cause is, therefore, and for the reasons above set forth, without merit, and is denied.

We are thus brought to a determination of this proceeding upon its merits. On and prior to December 10, 1929, there was pending in the Superior Court, in and for the County of Santa Barbara, an action entitled D. T. Blodgett, plaintiff, v. Olympic Refining Company, a corporation, et al., defendants, wherein the defendants had theretofore filed a demurrer, and which demurrer had been submitted for decision before Frank C. Collier, a superior judge of the state of California, in and for the county of Los Angeles, who had theretofore been by the chairman of the Judicial Council of said state assigned to sit for a season in the Superior Court, in and for the County of Santa Barbara. On December 10, 1929, D. T. Blodgett, the plaintiff, *in propria persona,*

in said action filed with the clerk of said court for presentation to the aforesaid judge, sitting therein, and which was in due course presented to him, a document purporting to be his points and authorities upon said demurrer, wherein appeared the following language: "The results from oil were found on a member of the President's Cabinet. He insists that his smooth action for the oil company was not caused by the grease found on him. Results from oil have not been found on either Judge Collier or Deputy Clerk James, but they could not have worked more smoothly for the oil company if the oil company had carefully oiled them." Thereafter, and on December 16, 1929, the said Frank Collier, as judge sitting in said court, made and issued an order, directed to said D. T. Blodgett, commanding him to appear in said court forthwith, then and there to show cause why he should not be punished for contempt of said court for having filed and presented the said document containing the aforesaid language, a copy of which was served with said order. The said D. T. Blodgett did not appear in response to said order, whereupon, and upon a showing of which, an attachment was issued out of said court for said Blodgett, directed to the sheriff of Santa Barbara County, who forthwith and by virtue thereof produced said Blodgett in said court. When so produced Blodgett filed a document entitled "Answer to Contempt Proceedings," wherein in the opening paragraph thereof he undertook to deny that he was in contempt of said court or intended so to be understood. He then, and in the succeeding paragraphs of his said answer, proceeded to set forth that Judge Frank C. Collier was "so greatly incensed against this plaintiff that it would be impossible to have a fair and impartial hearing of the issues of law and fact in the contempt proceeding instituted by said Frank C. Collier in the above entitled action on the 16th day of December, 1929; that said feeling against this plaintiff in the above entitled action was occasioned by the receipt of a letter by said Honorable Frank C. Collier from this plaintiff on the 14th day of December, 1929, a copy of which letter is attached hereto marked 'Exhibit A.'" The letter thus referred to contains several pages of typewritten matter, the precise content of which we refrain from reproducing because of the grossly improper and scandalous matter which it contains,

both directly and by repeated *innuendo* imputing to said judge not only a lack of mental qualifications to be a judge, but insinuating such a relationship to the defendants in the action, superimposed by bribery or by methods akin thereto as to disqualify him from further sitting or acting in said cause. The plaintiff presented said answer with its exhibit in open court upon the hearing upon said contempt proceeding; whereupon Judge Collier adjudged the plaintiff guilty of contempt in respect to the matter contained in his aforesaid "Points and Authorities," and also guilty of a further contempt of court consisting in the sending of the aforesaid letter and its presentation in open court upon the hearing upon his prior alleged contempt. In so doing the said court, by the aforesaid judge thereof, made and filed its judgment wherein there was set forth and recited in full the aforesaid matters and documents, wherein it was found and adjudged that the said plaintiff had committed a contempt of court in the filing and presentation of his said points and authorities, containing the language hereinabove quoted, and for which he should be punished by imprisonment in the county jail of the county of Santa Barbara for a period of five days, and that he should pay a fine in the sum of two hundred dollars; and that his imprisonment for such fine at the rate of not to exceed one day for each two dollars thereof should continue until said fine should be fully paid. The court by its said judgment further adjudged the said plaintiff guilty of a further contempt of court consisting in the sending to the judge thereof of the aforesaid letter, and in the further presentation thereof in open court in connection with and as a part of his answer in the prior contempt proceeding; and for which further contempt it was adjudged that the plaintiff be punished by imprisonment in the county jail of the county of Santa Barbara for a further period of five days, and that he pay a fine of five hundred dollars, and that his said imprisonment be continued therein until said fine shall have been fully paid at the rate of two dollars per day.

Upon the making and entry of said judgment the petitioner herein, on or about December 19, 1929, filed his petition in the District Court of Appeal in and for the Second District for a writ of review, with the result hereinbefore set forth, and which application is now before this court

for decision upon the merits and upon the record of said Superior Court, as above substantially set forth.

■ The first question presented for our consideration of this proceeding upon its merits is that of the asserted disqualification of Judge Collier to consider or pass upon the matter of the petitioner's contempt of court. Assuming, for the purposes of this branch of the proceeding, that the matter set forth in the brief of the petitioner on demurrer in the original case, and manifestly intended for presentation to the judge to whom that matter had been submitted for decision, was contemptuous, the authorities in this state hold uniformly that such contempt was one committed in the presence of the court within the meaning and intent of section 1209 of the Code of Civil Procedure, which reads, in part, as follows: "The following acts or omissions in respect to a court of justice or proceedings therein are contempts of the authority of the court: (1) Disorderly, contemptuous or insolent behavior toward the judge while holding the court tending to interrupt the due course of the trial or other judicial proceeding." It was so held in *Lamberson* v. *Superior Court*, 151 Cal. 458 [11 L. R. A. (N. S.) 619, 91 Pac. 100, 101], wherein the alleged contempt consisted in the filing for presentation to the judge on motion for change of judges in certain actions, affidavits scandalous in language and character assailing the integrity of the judge. In this decision the cases decided prior to its ruling in this and the appellate tribunal are reviewed; and the causes decided since its rendition have uniformly followed it. (*Lapique* v. *Superior Court*, 26 Cal. App. 258 [146 Pac. 690]; *Ex parte Ewell*, 71 Cal. App. 744 [236 Pac. 205]; *In re Arnold*, 204 Cal. 175 [267 Pac. 316].) Assuming that the foregoing statement of the petitioner was contempt of court it constituted, under the above authorities, a direct, as distinguished from a constructive, contempt; and as such a contempt which the trial court was entitled to summarily punish under the provisions of section 1211 of the Code of Civil Procedure. ■ This brings us directly to the next question submitted by the petitioner for our consideration, which is as to whether upon a hearing on a charge of the commission of a direct contempt the person charged with such commission is entitled to urge the disqualification of the judge in and against whose court the offense was com-

mitted, under the provisions of section 170 of the Code of Civil Procedure. Upon this question the authorities are practically uniform, not only in this state but all over the country, to the effect that a person charged with the commission of a direct contempt and subject to be summarily punished therefor may not be heard to urge the disqualification of the judge about to adjudge the party guilty of such direct contempt. The leading case in this country upon that subject is that of *Ex parte Terry*, 128 U. S. 289 [32 L. Ed. 405, 9 Sup. Ct. Rep. 77, 80, see, also, Rose's U. S. Notes], wherein, after a review of many authorities, the Supreme Court of the United States held that the power immediately to punish an offender for a direct contempt is, and from the most ancient times has been, an inherent power, upon the recognition and enforcement of which ''depend the existence and authority of the tribunals established to protect the rights of the citizens, whether of life, liberty or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. . . . Blackstone thus states the rule: 'If the contempt be committed in the face of the court, the offender may be *instantly* apprehended and imprisoned at the discretion of the judges, without any further proof or examination.' '' And the court further quotes from Bacon's Abridgment, title Courts, E, wherein it is laid down that ''Every court of record, as incident to it, may enjoin the people to keep silence, under a pain, and impose reasonable fines, not only on such as shall be convicted before them of any crime on a formal prosecution, but also on all such as shall be guilty of any contempt in the face of the court, as by giving opprobrious language to the judge, . . . and immediately order them into custody.'' The federal tribunals have uniformly applied the rule to cases before them to the extent of holding that a person charged with a direct contempt is not entitled to apply for a change of venue on the ground of the bias and prejudice of the judge. (*Eilenbecker* v. *Plymouth Co.*, 134 U. S. 31 [33 L. Ed. 801, 10 Sup. Ct. Rep. 424]; *Bessette* v. *Conkey Co.*, 194 U. S. 324 [48 L. Ed. 997, 24 Sup. Ct. Rep. 665, see, also, Rose's U. S. Notes]; *Fleming* v. *United States*, 279 Fed. 613.) The state courts in other jurisdictions have also, with like uniformity, declared it to be the rule, as stated in *State* v. *Bland*, 189

Mo. 197 [3 Ann. Cas. 1044, 88 S. W. 28, 31], that "It is settled law that contempt cases are *sui generis,* that one court may not try a case of contempt against another, that contempt proceedings are summary, that there is no constitutional right to trial by jury, *and that no change of venue will lie.''* (See, also, *In re Cooper,* 32 Vt. 253; *State* v. *Woodfin,* 27 N. C. 199 [42 Am. Dec. 161]; *Ex parte Mc-Cown,* 139 N. C. 95, 104 [2 L. R. A. (N. S.) 603, 51 S. E. 957]; *Coons* v. *State,* 191 Ind. 580 [20 A. L. R. 900, 134 N. E. 194]; *Dale* v. *State,* 198 Ind. 110 [49 A. L. R. 647, 150 N. E. 781]; *Noble* v. *Aasen,* 10 N. D. 264 [86 N. W. 742]; *Tucker* v. *State,* 35 Wyo. 430 [251 Pac. 460]; *State* v. *Shepherd,* 177 Mo. 205 [99 Am. St. Rep. 624, 76 S. W. 79]; *State* v. *Clancy,* 30 Mont. 193 [76 Pac. 10]), and many others. The courts of California have also, from their earliest formation down to the present time, followed and applied the foregoing rule to cases of direct contempt. In *People* v. *Turner,* 1 Cal. 152, it was stated that, "By the common law every court has, while engaged in the performance of its lawful functions, as an incident to its judicial character, the authority to preserve order, decency and silence, without which no court could vindicate or support the laws entrusted to its administration. . . . The 13th section of the act organizing the district court, which is but declaratory of the common law, enacts 'that such courts shall have power to punish in a summary manner by fine and imprisonment, or either, for contempt offered to them while in session or to any process, writ, rule or order of said courts, or for disobeying any writ, process or order thereof, or for obstructing or preventing the execution of the same; and that the judgments, decrees and determination of said courts shall be final and conclusive.' It will be observed that this statute, in carrying out the doctrine of the common law, provides for two different classes of contempts; the one class, consisting of such contempts as are committed in the presence of the court during its session; and the other class, of such contempts as are committed out of court. The method of proceeding in the punishment of these two classes of contempt is different. In the former, the offender may be instantly apprehended and punished without any further examination or proof." From time to time, since that early decision, this court has had occasion to approve

and apply the principle therein declared, and in the case of *Lamberson* v. *Superior Court, supra,* to refer to its earlier decisions and to give these direct application to a case in substantial effect identical with the case at bar; since in that case the person charged with a direct contempt undertook to invoke the provisions of section 170 of the Code of Civil Procedure in order to escape punishment by the judge of the court who had been assailed. In passing upon that matter this court said: "Nor is the judge disqualified from sitting in the contempt proceedings. Petitioner's theory in this regard, if we understand it, is that the judge is disqualified from hearing the proceedings in contempt because the contempt itself consists in imputations upon his motives and attacks upon his integrity. Such is not and never has been the law. The position of a judge in such a case is undoubtedly a most delicate one, but his duty is none the less plain, and that duty commands that he shall proceed. However willing he may be to forego the private injury, the obligation is upon him by his oath to maintain the respect due to the court over which he presides. As was said by the chief justice of this court in *In re Philbrook,* 105 Cal. 471 [45 Am. St. Rep. 59, 38 Pac. 511, 884]: 'The law which in such cases makes us the judges of offenses against the court places us in an extremely delicate and invidious position, but it leaves us no alternative except to allow the court and the people of the state, in whose name and by whose authority it acts, to be insulted with impunity, or to exercise the authority conferred by law for the purpose of compelling attorneys to maintain the respect due to courts of justice and judicial officers.' Were the rule otherwise so that it was required that another judge should be called in to sit in the proceeding, the recalcitrant and offending party would need only to insult each judicial officer in turn until the list was exhausted, and thus, by making a farce of legal procedure, go scatheless and unpunished." The rule thus laid down has been followed by the later decisions of the appellate tribunals of this state, and has been expressly cited and approved in other jurisdictions. It is the petitioner's contention, however, that the Lamberson case and the cases following it were decided prior to the amendment of section 170 of the Code of Civil Procedure, and that the doctrine therein enunciated has been so far

affected by that amendment as to give to a person charged with the commission of a contempt, in the presence of the court during the progress of a civil or criminal action or proceeding, the right to assert the disqualification of the judge to hear and adjudge such contempt, and to have a change of judges or place of trial for the determination thereof. ■

The said amendment to section 170 of the Code of Civil Procedure was adopted by the legislature in 1929 (Stats. 1929, p. 957). An examination of the statute embracing said amendment shows that the provisions of the section as it originally read are retained and re-enacted down to the place of insertion of said amendment, and, under well-settled principles of statutory interpretation must be held to have been continued in force with whatever interpretation the courts had theretofore placed upon the scope and meaning thereof, unless the amendment itself purports to work a change in the scope and meaning of the terms of the original section as thus judiciously interpreted. Bearing the foregoing canon of interpretation in mind, we quote the terms of the amendment, in so far as the same is asserted to have a bearing upon the immediate question before us. It reads, in part, as follows: ''No judge of a court of record, who shall deny his disqualification, shall hear or pass upon the question of his own disqualification; but in every such case, the question of the judge's disqualification shall be heard and determined by some other judge agreed upon by the parties who shall have appeared in the action or proceeding, or, in the event of their failing to agree, by a judge requested to act by the chairman of the judicial council, and, if the parties fail to agree upon a judge to determine the question of the disqualification, within five days after the expiration of the time allowed herein for the judge to answer, it shall be the duty of the clerk then to notify the chairman of the judicial council of that fact; and it shall be the duty of the chairman of the judicial council forthwith, upon receipt of notice from the clerk, to request some other judge, not disqualified, to hear and determine the question.'' It would not seem from the text or context of the aforesaid amendment that it was intended to have any broader application than to such actions or proceedings to which the original section applied. However, if it should be held, as is argued herein, that such amendment to sec-

tion 170 of the Code of Civil Procedure was intended by the legislature to be given application to cases of direct contempt, such as the contempt or contempts in the instant proceeding must be held to be, we have no hesitation in reaching the conclusion that any such legislative purpose would be void as in violation of the inherent right of courts of justice to maintain that dignity, decency, order and respect which are essential to the proper administration of justice therein; and to that end to punish summarily those persons whose disorderly, contemptuous or insolent behavior toward the judge thereof tends to interrupt the due course of a judicial proceeding. The language of this court in the case of *In re Shortridge*, 99 Cal. 526, 532 [37 Am. St. Rep. 78, 21 L. R. A. 755, 34 Pac. 227, 229], is unmistakable in upholding this view. The court, in passing upon another certain action of the legislature, viz., the effect to be given to subdivision 13 of section 1209 of the Code of Civil Procedure, stated: ''No authority has been found which denies the inherent right of a court, in the absence of a limitation placed upon it by the power which created it, to punish as a contempt an act which tends to impede, embarrass or obstruct the court in the discharge of its duties. It is a doctrine which is admitted in all its rigor by American courts everywhere, and it does not need the support of foreign authorities based upon the fiction that the majesty of the king, represented in the persons of the judges, is always present in the court. It is founded upon principle—which is coeval with the existence of the courts, and as necessary as the right of self-protection—that it is a necessary incident to the execution of the powers conferred upon the court, and is necessary to maintain its dignity, if not its very existence. It exists independent of statute. The legislative department may regulate the procedure and enlarge the power, but it cannot without trenching upon the constitutional powers of the court and destroying the autonomy of that system of checks and balances which is one of the chief features of our triple-department form of government, fetter the power itself.'' The decisions of other jurisdictions having statutes practically identical in language with that contained ·in section 170 of the Code of Civil Procedure and of the recent amendment thereto have held that such statutes have no application to proceedings for the punishment of

direct contempt. (*State* v. *Clancy, supra; Coons* v. *State, supra; Dale* v. *State, supra; Noble* v. *Aasen, supra; Smith* v. *Speed*, 11 Okl. 95 [55 L. R. A. 405, 66 Pac. 511]; *In re Brown*, 168 N. C. 417 [84 S. E. 690]; *Tucker* v. *State, supra; State* v. *Shepherd, supra; Van Dyke* v. *Superior Court*, 24 Ariz. 508 [211 Pac. 576].) The leading text-writer of this country upon the subject of "contempt" is Rapalje, who in his very learned work, after a review of many cases in both federal and state jurisdictions, states in section 1 of his treatise: "It is conclusively settled by a long line of decisions that at common law all courts of record have inherent power to punish contempts committed *in facie curiae*, such power being essential to the very existence of a court as such and granted as a necessary incident in establishing a court as such"; and in section 11 of his work the author further states it to be the general rule that: "In the absence of a constitutional provision on the subject the better opinion seems to be that legislative bodies have no power to limit or regulate the inherent power of courts to punish for contempt. This power being necessary to the very existence of a court, as such, the legislature has no right to take it away or hamper its existence." ▮ We conclude from the foregoing current of authority that section 170 of the Code of Civil Procedure, neither before nor after its amendment in 1929, had or has any application to the summary proceeding for the punishment of direct contempts provided for in sections 1209 and 1211 of said code.

▮ This brings us to the consideration of the two final questions in this matter, assumed for the purposes of the foregoing considerations but now to be determined. These are, first, as to whether the content of the "Points and Authorities" of the plaintiff in said former action, and which are hereinabove set forth, is sufficient to constitute the basis for the proceeding instituted, in the court in which Judge Collier was for the time being sitting, for the plaintiff's punishment for contempt of court; second, whether the matter in the form of the plaintiff's letter directed to Judge Collier just prior to the time set for the appearance of the plaintiff upon the first contempt charge and produced in open court by said plaintiff upon said charge and in support of his claim of disqualification on the part of said judge

to hear or determine said charge, is sufficient to furnish the basis for the punishment of the said plaintiff for a second contempt. The objectionable content of the plaintiff's "Points and Authorities" above quoted contained if not the direct assertion, at least the easily inferable *innuendo* that Judge Collier, in the action in which the petitioner herein was a party plaintiff then pending before him, was acting corruptly in the interest of the Olympic Refining Company, one of the defendants therein. Such a charge, however veiled in such a document, was contemptuous, and that it was manifestly intended so to be and to have had for its purpose that of creating in the mind of the judge such an unjudicial attitude toward the parties in the cause then pending before him as would suffice to lay the foundation for a claim of disqualification to further proceed with the trial of the plaintiff's action, seems a rational conclusion; and the scandalous letter which presently followed, and which was written and directly addressed to the judge by said plaintiff renders the foregoing conclusion an almost irresistible one. That communications of that character and of such manifest intent are contemptuous is exemplified by many of the cases above cited, and constitutes, as we have already seen, a direct contempt of court. The judge of said court had, therefore, jurisdiction under the provisions of section 1209 et seq. of the Code of Civil Procedure to deal with such contempt in the form and manner which, as the record herein discloses, was pursued, and had also jurisdiction to impose the penalties provided for in the order of said court and the judge thereof which the petitioner herein sought by this proceeding to have reviewed. As to the second contempt, based upon the production by the plaintiff in open court of the scandalous letter which he had theretofore addressed to the judge thereof and which was so much more expressly insulting and flagrantly offensive than his first communication, little need be said. It was produced and ostensibly offered by the plaintiff in support of his claim of disqualification on the part of the judge to hear and determine his first alleged contempt. But if, as we have seen, the plaintiff was not entitled to assert, in such a direct contempt proceeding, the judge's disqualification to adjudge the plaintiff guilty and to punish him summarily for the same, then his production and offer of said scandalous letter

in open court could not but constitute another and more flagrant contempt. A case precisely in point is that of *Fleming* v. *United States*, 279 Fed. 613, 615. In that case it appeared that the defendant had made application for a change of venue in a certain action wherein, as the Circuit Court of Appeals held, he was not entitled to present such a motion. When cited to show cause why he should not be punished for contempt in filing in support of his aforesaid unauthorized motion a certain affidavit, scandalous in character, the said defendant contended that he was within his rights in presenting said affidavit upon his motion for change of venue. In disposing of this contention the Court of Appeals said: "In the case at bar the defendant was well aware that there was no court to which the case could be transferred and no other judge could be called in to hold the United States court for China. He knew that to present such a motion was at best to perform an idle act. In addition to that the motion and the accompanying affidavit were not only disrespectful, but were scandalous, insulting, libelous and contemptuous. They were a direct affront to the court and their tendency was obviously to obstruct the administration of justice. . . . The punishment was lawfully imposed in the exercise of the court's power to preserve its dignity and decorum in the administration of justice." In the instant case the petitioner herein by the production of his said letter in open court in support of an attempt to avoid summary punishment for his former contempt by a method which he was not entitled to employ, was doing none other than seeking present escape from one contempt by committing another and more scandalous one, this time in the actual presence and hearing of the court while in open session. It was therefore another and added contempt of court for the commission of which the judge was entitled by the proceeding and order disclosed by the record herein to impose another and added penalty.

Our attention has been called to the cases of *Works* v. *Superior Court*, 130 Cal. 304 [62 Pac. 507], *Webb* v. *Superior Court*, 28 Cal. App. 301 [152 Pac. 957], and *In re Lake*, 65 Cal. App. 420 [224 Pac. 126], as applicable to the instant proceeding. In each of the foregoing cases the respective petitioners had presented to the trial court a proper motion for change of place of trial under section 170 of the

Code of Civil Procedure, and in support thereof had also presented in a respectful manner affidavits setting forth bias and prejudice on the part of the trial judge sufficient, if true, to justify if not compel the granting of their said respective motions. It was in each of said cases held that the presenting of such affidavits in support of a proper motion for change of venue would not constitute, if respectfully presented, a contempt of court. Obviously, these cases have no application to the proceedings sought to be reviewed herein. We have been careful in this opinion to confine it to proceedings in direct contempt.

The writ of review heretofore issued herein is discharged. The judgments are affirmed and the petitioner remanded.

Waste, C. J., Curtis, J., Shenk, J., Seawell, J., Langdon, J., and Preston, J., concurred.

Rehearing denied.