[L. A. No. 12410. In Bank.—February 25, 1931.]

H. B. R. BRIGGS et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

McAdoo, Neblett & Clagett and S. S. Hahn for Petitioners.

Everett W. Mattoon, County Counsel, and Robert W. Kenny, Deputy County Counsel, for Respondents.

THE COURT.—The petitioners applied for a writ of prohibition which had for its purpose that of restraining the respondent court, acting through the respondent judge thereof from proceeding with a further hearing upon a certain contempt proceeding pending in said court, the petitioners contending that the aforesaid judge was disqualified to proceed further with the hearing of the cause by virtue of the provisions of section 170 of the Code of Civil Procedure (Stats. 1929, p. 958), and of the action of the petitioners taken thereunder presenting such disqualification and of the action of said court and judge thereon. The petitioners in support of their application alleged in substance that on May 17, 1930, a contempt proceeding had been instituted in said superior court and before the said judge thereof through the filing of an affidavit charging the petitioners with contempt of court, in which affidavit there was set forth in thirteen separate counts thereof the details of the petitioners' alleged several contempts. In each of said counts the affiant purported to set forth a series of separate offenses alleged to have been committed by the petitioners through the publication, prior to said date, of certain articles and cartoons in the "Los Angeles Record," a newspaper of general circulation, and of which newspaper the petitioners were and are the publishers and editors. That as to each of said counts it was stated by said affiant that the publications, statements and cartoons set forth

therein naturally tended and were calculated to and were made and published by the aforesaid publishers thereof with the purpose and intent that they should and would embarrass, impede, interrupt, obstruct and intimidate the grand jury of said court then in session, and the members thereof, in its proceedings and in the performance of its duties, and interfere with, influence, sway and control the proceedings of said grand jury, and interfere with, influence, sway, control and intimidate any persons who might be called upon to testify as witnesses by said grand jury; hold up to ridicule and opprobrium the investigation and proceedings then pending before said grand jury, and interfere with the orderly and due performance of its duty by said grand jury and the duties of the members of said grand jury as grand jurors, and with the orderly and due administration of justice. From the foregoing epitome it sufficiently appears that a series of actual interferences with the due and orderly administration of justice in said court and before said grand jury were asserted to have occurred and to be still in course of occurring at the time the aforesaid accusations were filed, and with direct reference to proceedings then pending and undetermined before said court and grand jury. The petitioners herein proceed to aver that pursuant to said accusations and on May 17, 1930, an order to show cause had been issued out of said superior court directing the petitioners to appear in department 49 thereof upon June 2, 1930, then and there to show cause why they and each of them should not be punished for contempt of court; that the Honorable Frank C. Collier was during all of the times mentioned in said application and still is the judge of said court assigned to department 49 thereof; that on May 31, 1930, the petitioners, having been duly served with such order or citation, appeared in response thereto and filed with the clerk of said court a duly verified statement in writing, objecting to the hearing of such matter or the trial of any issue of fact or law therein before said judge, and purporting to set forth the fact or facts which were alleged to constitute the grounds of disqualification of such judge, and alleged that by reason of the bias and prejudice of said judge, as set forth specifically in said statement, a fair and impartial hearing upon said contempt proceeding could not be held before him. It is not neces-

sary for the purposes of the present hearing to enter into further detail as to the content of said statement. On June 2, 1930, at the place and hour fixed by the court for a return upon its said citation, all parties interested being present in the aforesaid department of said court, and the Honorable Frank C. Collier also being present and presiding therein, and the court being duly convened, said Frank C. Collier caused himself to be sworn as a witness and thereupon proceeded to deny or explain specifically all of the material contents and contentions set forth in the petitioners' aforesaid statement and objections and having done so further proceeded to hold and determine that section 170 of the Code of Civil Procedure had no application to such a contempt proceeding as was then pending before said court and the said judge thereof, and he thereupon ordered the petitioners to appear before him on June 9, 1930, for such further hearing and determination of said contempt proceeding as might there and then be undertaken. That said Frank C. Collier thereupon stated in open court that his order continuing the matter until June 9, 1930, was made to enable counsel, if they so desired, to apply for and obtain a writ of prohibition, whereby the question of the applicability of section 170 of the Code of Civil Procedure might be determined by the Supreme Court and the correct rule established. The petitioners allege that the said court through the said judge thereof, and in violation of the provisions of section 170 of the Code of Civil Procedure, threatened upon said date to proceed with the further hearing of said contempt matter before the said court and the judge thereof, in alleged excess of the jurisdiction of the said court and judge so to do; wherefore they applied for the issuance of an alternative writ of prohibition herein. In response to their application and to said writ the respondents court and judge herein have appeared and have demurred to the petition, and have also presented answers thereto which, however, apparently raise no material issue of fact. The only issue of law thus presented is, therefore, as to whether the provisions of section 170 of the Code of Civil Procedure, especially as to the portion thereof embraced in the amendment thereto adopted in 1929 (Stats. 1929, p. 958), have application to contempt proceedings of

the character of those brought under our review in this proceeding.

It is at the outset to be noted that the several and separate acts of contempt of court of which the petitioners were alleged by the terms of the original affidavit to have been guilty were each and all of the nature usually defined as constituting constructive criminal contempt, contained in articles and cartoons published at various times in said newspaper, and thus necessarily out of the immediate presence and hearing of said court and of the judge thereof, but which, according to the averments of the original affidavit presented and filed therein, consisted in a series of attempts to interfere unlawfully with the processes and proceedings of said court, constituting an actual and intended interference with the orderly administration of justice therein, and hence being such as to subject the petitioners herein to such summary proceedings for the punishment of contempt of court as are provided for in sections 1209 to 1222 of the Code of Civil Procedure. Whether or not the provisions of section 170 of the Code of Civil Procedure have application to such constructive criminal contempt is practically the only question which we are called upon herein to decide.

In the recent case of *Blodgett* v. *Superior Court,* 210 Cal. 1 [290 Pac. 293], this court had occasion to fully discuss and determine the question as to whether or not the provisions of section 170 of the Code of Civil Procedure, either as the same originally read or as it has been recently amended to read, could be given application to proceedings for the hearing and determination of direct contempts, that is to say of contempts alleged to have been committed within the immediate presence of the court and of the judge thereof proceeding to summarily determine and punish such contempt. In deciding that the provisions of section 170 of the Code of Civil Procedure, either as it originally read or as it has been recently amended, could not be given application to such a situation as that which was involved in the Blodgett case, we were careful to confine the reasoning and conclusions of the court in that matter to cases of direct contempt. It is, however, the contention of the petitioners that conceding the entire correctness of our reasoning and conclusions in that case as applicable to situations involv-

ing a direct contempt of court the rule therein laid down is a rule of necessity wherein the inherent powers of courts of justice must be immediately set in motion to prevent and punish interferences with the due and orderly administration of justice when committed in the actual and immediate presence of the court, such drastic and summary action is not required to be applied with the same urgency in cases of constructive contempt. In support of this view we are pointed by the petitioners to an essential difference in the procedure provided by the statute to be applied to cases of direct as distinguished from constructive contempts. This distinction it is urged is given expression in the very terms of sections 1211 and 1212 of the Code of Civil Procedure. The first paragraph of the former section provides that "when a contempt is committed in the immediate view and presence of the court, or judge at chambers, it may be punished summarily; for which an order must be made reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt and that he be punished as therein prescribed". The second and concluding paragraph of said section provides: "When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators or other judicial officer." Section 1212 immediately follows, providing the procedure to be applied to contempt when not committed in the immediate view and presence of the court or judge. It is provided that "a warrant of attachment may be issued to bring the person charged to answer; or, without a previous arrest a warrant of commitment may, upon notice or upon an order to show cause be granted; and no warrant of commitment can be issued without such previous attachment to answer, or such notice or order to show cause". Section 1217 of the same code provides that "when the person arrested has been brought up or appeared, the court or judge must proceed to investigate the charge and must hear any answer which the person arrested may make to the same and may examine witnesses for or against him for which an adjournment may be had from time to time if necessary". Section 1218 follows with the provision that

"Upon the answer and evidence taken the court or judge must determine whether the person proceeded against is guilty of the contempt charged; and if it be adjudged that he is guilty of the contempt a fine may be imposed on him not exceeding five hundred dollars, or he may be imprisoned not exceeding five days or both." The courts of this state have had frequent occasion to pass upon the application of the foregoing provisions of the Code of Civil Procedure in cases of both direct and constructive contempt. ▪ As to the former it has been uniformly held that the inherent power of the court or judge thereof to deal summarily with an offender who by tumultuous or offensive conduct or by opprobrious or insulting language perpetrated in the immediate view and presence of the court or judge actually impedes or interferes with the due and orderly administration of justice in a pending cause may not be taken away or materially diminished by legislation. This subject was quite fully considered by this court in the case of *Lamberson* v. *Superior Court*, 151 Cal. 458 [11 L. R. A. (N. S.) 619, 91 Pac. 100], wherein the earlier cases were reviewed and the unimpeded right of the court or judge to punish immediately and summarily a direct contempt was fully upheld; and in which case also it was declared that the judge was not and could not be disqualified from sitting in or hearing in direct contempt, even though the contempt itself consisted in imputations upon his motives and attacks upon his integrity. In so deciding the court quoted with approval the following apt language of Chief Justice Beatty in the case of *In re Philbrook*, 105 Cal. 471 [45 Am. St. Rep. 59, 38 Pac. 511]: "The law which in such cases makes us the judges of offenses against the court places us in an extremely delicate and invidious position, but it leaves no alternative except to allow the court and the people of the state in whose name and by whose authority it acts, to be insulted with impunity or to exercise the authority conferred by law for the purpose of compelling attorneys to maintain the respect due to courts of justice and judicial officers." In commenting upon the foregoing language this court said: "Were the rule otherwise so that it was required that another judge should be called in to sit in the proceeding the recalcitrant and offending party would need but to insult each judicial officer in turn

until the list was exhausted and thus, by making a farce of judicial procedure, go scathless and unpunished." The court further quoted at length from the case of *In re Shortridge,* 99 Cal. 526 [37 Am. St. Rep. 78, 21 L. R. A. 755, 34 Pac. 227], which, while a case of constructive contempt, went very far in denying the power of the legislature to interfere materially with the inherent right of the court "to punish as a contempt an act—whether committed in or or out of its presence—which tends to impede, embarrass or obstruct the court in the discharge of its duties"; the court stating in conclusion that "The legislative department may regulate the procedure and enlarge the power, but it cannot without trenching upon the constitutional powers of the court . . . fetter the power itself." In the latter case, however, it is to be noted that, as the record discloses no issue as to the disqualification of the trial judge was presented, but that the language of the court above quoted had reference to a then recent legislative attempt to take away from courts altogether the power to punish as a contempt any speech or publication reflecting upon any court or any officer thereof unless the same was "made in the immediate presence of such court while in session and in such manner as to actually interfere with its proceedings". It was this particular change in the wording of subdivision 13 of section 1209 of the Code of Civil Procedure which the court by its foregoing utterance declared to be beyond the scope of legislative power. In the recent case of *Hotaling* v. *Superior Court,* 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73], this court made a careful review of certain cases dealing with the specific nature of contempt proceedings as being *sui generis;* as not constituting a civil action either at law or in equity, but being a separate proceeding of a criminal nature and summary character, wherein the court exercised but a limited jurisdiction; and as being a proceeding prosecuted by or on behalf of the people of the state for the protection of their courts of justice. In so doing the court defined the precise procedure to be followed in cases of constructive contempt. In certain other both early and recent decisions it has uniformly been held that the procedure to be thus employed in cases of constructive contempt must be most strictly pursued in order to give the court jurisdiction to make and enforce whatever orders it may enter therein.

(*Ex parte Rickert,* 126 Cal. 244 [58 Pac. 549]; *Fletcher* v.
*District Court,* 191 Cal. 711 [218 Pac. 391]; *Ex parte
Brambini,* 192 Cal. 19 [218 Pac. 569]; *Ex parte Wood,* 194
Cal. 49 [227 Pac. 908].) ▆▆ Bearing in mind the fore-
going utterances of this court in seeking to interpret the
provisions of section 1209 et seq. of the Code of Civil Pro-
cedure relating to direct and indirect or constructive con-
tempts it must be conceded that both by these decisions and
by the language of the statute itself a distinction may well
be said to be created between these two classes of contempts,
not as to the nature or even the effect of each, but as to
the procedure to be employed in order to determine the fact
as to the existence of each and the judgment in each in-
stance to be arrived at and enforced. In cases of direct
contempt there is in fact no procedure at all resembling
that to be pursued in the course of civil or even criminal
actions. The court in such cases acts immediately upon its
own observation and knowledge and administers instant and
summary punishment. But a quite different method has
been prescribed by the statute for the ascertainment, de-
termination and ultimate punishment in cases of construc-
tive contempt—a method in fact which partakes of the
nature of the usual procedure in both civil and criminal
cases. The accusation is in the nature and form of a veri-
fied complaint. The warrant, citation or order to show
cause is the equivalent of a summons and must be similarly
served. The alleged culprit becomes the defendant and upon
his appearance is entitled to present his answer or defense.
The issues being thus made up the court is required to
hear and determine the same, to examine witnesses *pro* and
*con,* for which purpose adjournments may be had from time
to time. Upon the eventual submission of the matter the
court must determine, upon the answer and evidence taken,
whether the person proceeded against is guilty of the con-
tempt charged and must enter its judgment accordingly. It
would seem from the foregoing *résumé* of the terms of the
statute relating to contempts that a clearly marked distinc-
tion is discernible between the instant and in a sense
unique action of the trial court or judge in cases of direct
contempt and the orderly and detailed procedure *strictissimi
juris* prescribed in cases of constructive contempt; a dis-
tinction which persists regardless of the gravity in each in-

stance of the offense or of the intent, purpose and effect of the action or conduct of the offender.

Bearing in mind this distinction we are brought to a consideration of the provisions of section 170 of the Code of Civil Procedure as it existed originally and as it has been recently amended. This section of the code in its original form provided that, "No justice, judge or justice of the peace shall sit or act in any action or proceeding" in which there shall be made to appear any one or more of the several specified disqualifications so to do set forth in the subdivisions of said section. In its original form the question of the existence of the particular disqualification urged by the objecting party or parties to the action was to be determined by the judge himself, and his determination thereof was final except upon the main appeal. While the statute stood in the above form it was, as we have seen, decided by this court that the section could not be given application to cases of direct contempt for the reason that so to do would be to approve a legislative interference with an inherent power in the courts, the existence and exercise of which in all its force was indispensable to the due and orderly administration of justice in the cause then pending in the particular court. It was not, however, as we have already seen, directly decided in any case that the section could not be given application to cases of constructive contempt, although it must be admitted that there were strong intimations in certain of our cases above cited to that extent and effect. ▮ In the year 1927 (Stats. 1927, p. 1403), however, section 170 was amended so as to read in its present form. The amendment to said section thus made went to the very substance of the subject matter thereof by the taking away from the trial judge of any court of record, denying his disqualification, the power theretofore given, to hear and determine the question of his own disqualification. It will be seen that the opening language of the section giving it application "to any action or proceeding" is broadened by the terms of the amendment so as to render the section as amended applicable to every case wherein the question of the disqualification of the judge of a court of record could arise. In the presence of the precise terms of this amendment to the section in question we are constrained to hold it to have been the legislative

intent to thereby render said section applicable to every possible case involving a disqualification of the trial judge. We nevertheless adhere to the views expressed in our earlier decisions as to the inapplicability of this section of the code, whether it read originally or as it has been made to read by its aforesaid amendment, to cases of direct contempt, and we place our present conclusion upon the same ground as that expressed in our former opinions, viz., that of necessity the courts must be held to retain their ancient and inherent power to summarily deal with all cases of direct contempt committed in the immediate view and presence of the court directly effecting or intended to effect an interference with the due and orderly conduct of the causes then pending therein. ■ We do not, however, perceive from the careful reading and consideration which we have above devoted to the language and content of section 1209 et seq. of the Code of Civil Procedure that a like necessity for immediate and summary action on the part of the trial court or judge exists in cases of constructive contempt, since this class of contempts, under the precise wording of the above sections of the code creating the same, are made to require for their determination and punishment a course of procedure similar, though it is true more summary than that prescribed for ordinary actions or proceedings of a civil or criminal nature involving pleadings, process, appearances, answers, the presentation of evidence and the continuances and delays incident to the trials of actions in general. We are unable to say that the legislature was without power to provide such a procedure for the hearing and determination of cases of constructive contempt; and for an even stronger reason we are unwilling to hold that the legislature by its recent amendment to section 170 of the Code of Civil Procedure was without power to prescribe the otherwise usual and salutary provision that the trial judge in such, as in all other cases save those of direct contempt, shall no longer be permitted to pass upon the question of his own disqualification. In thus concluding we have examined the many and conflicting decisions of the courts of other jurisdictions touching the inherent powers of courts and judges to deal with the subject of contempts, whether direct or constructive. The practically universal trend of decision favors the views we have steadfastly maintained

as to the inherent and untrammeled power of trial courts and judges to deal summarily with cases of direct contempt; but as to constructive contempts the trend of modern decision is toward upholding the exercise of legislative discretion in limiting the power of trial courts and judges to pass upon the question of their own asserted disqualification to hear and determine such causes. The recent amendment of section 170 of the Code of Civil Procedure is, we think, in accord with this trend, and we therefore hold it applicable to cases of constructive contempt.

In directing the issuance of the writ herein it is obvious that it should be confined in its application to the particular judge who is made a respondent herein, and only to the extent of prohibiting him from passing upon the question of his own disqualification, and should not be extended to the superior court which not only has jurisdiction over the original action, but which has also numerous other judges, some of whom at least are probably not subject to the disqualifications urged against the particular respondent herein.

Let the writ as thus limited accordingly issue.