[L. A. No. 16804. In Bank.—October 16, 1939.]

GERMAN BULCKE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Gladstein, Grossman & Margolis, Ben Margolis, Gallagher, Wirin & Johnson and A. L. Wirin for Petitioner.

J. H. O'Connor, County Counsel, Douglas De Coster, Chief Deputy County Counsel, Newlin & Ashburn, A. W. Ashburn, Michael G. Luddy and Arnold Praeger for Respondents.

EDMONDS, J.—The petitioner in this proceeding sent a telegram to Judge Ruben S. Schmidt protesting against the decision which occasioned the controversy in the case of *Bridges* v. *Superior Court, ante,* p. 464 [94 Pac. (2d) 983], and was adjudged guilty of contempt. Upon his petition a writ of review was issued by this court.

It appears that on the day before that set for hearing a motion for a new trial and a motion to vacate the judgment which had been rendered in the litigation concerning the affiliation of union longshoremen at Los Angeles harbor, petitioner, as vice-president of the International Longshoremen's and Warehousemen's Association, sent Judge Schmidt, before whom the motion was pending, the following telegram:

"Five thousand members and permit men International Longshoremens and Warehousemens Union Local 1–10 have accepted National Labor Relations Act Guaranteeing right of American workers to select own union and sole collective bargaining agency as boon to labor. We believe such rights in best American tradition. Appointment of administrator for handling union affairs International Longshoremens and Warehousemens Union Local 1–13 nullifies intent Labor Relations Act and is severe injustice to members that local. We urge such appointment shall not be made."

This telegram was received by the judge in his chambers and later shown by him to a committee of the Los Angeles Bar Association.

Thereafter, affidavits made on behalf of the association were filed in the superior court. According to one of them, the telegram sent by the petitioner was calculated and intended by him to interfere with and influence the actions and decisions of Judge Schmidt in the matters then pending before him; interfere with the due and orderly administration of justice; and bring about the vacation of the order theretofore made by causing him to grant a new trial. Upon these affidavits Judge Schmidt issued an order requiring the peti-

tioner to show cause why he should not be adjudged guilty of contempt and punished therefor.

When the petitioner appeared before the court in response to the order to show cause, his counsel offered a peremptory challenge to the judge under the provisions of section 170.5 of the Code of Civil Procedure. This challenge was properly denied. (*Austin* v. *Lambert*, 11 Cal. (2d) 73 [77 Pac. (2d) 849, 115 A. L. R. 849].) There was also presented a written "motion" to disqualify Judge Schmidt for cause. This was accompanied by an affidavit stating facts allegedly showing bias and prejudice.

Declining to consider the "motion" or the supporting affidavit, the court sustained an objection to their being filed upon the ground that the contempt charged against the petitioner was a direct and not a constructive one. The prosecution then withdrew the objection to the filing of the documents and asked that the court allow them to be filed and then deny the motion, but Judge Schmidt ruled: "The Court on its own motion will deny the request to have the motion filed."

Counsel for petitioner then requested a jury trial, which request was likewise denied. A trial of the issues followed, and upon its conclusion judgment was rendered that the action of the petitioner in sending the quoted telegram was a contempt of the court and that he should be punished accordingly.

In contending that this judgment should be annulled, the petitioner, in addition to other objections made by him, insists that it is void because Judge Schmidt refused to follow the requirements of section 170 of the Code of Civil Procedure which provide for the hearing and determination of challenges for cause. The point relied upon in this regard is that when the petitioner filed his written statement under oath, objecting to the hearing of the contempt matter by Judge Schmidt and setting forth the grounds for the disqualification in the form required by the statute, Judge Schmidt lost jurisdiction to proceed further. The answer to this question depends upon whether the sending of a telegram to a judge under the circumstances here shown is a direct contempt of court. For if the act charged against the petitioner was a constructive contempt, then Judge Schmidt had no authority to hear or pass upon the question of

disqualification raised by the petitioner. (*Briggs* v. *Superior Court*, 211. Cal. 619 [297 Pac. 3].)

Apparently the appellate courts of this state have not heretofore been called upon to decide whether one who sends to a judge a communication concerning a pending case commits a direct or a constructive contempt of court although by each of three decisions the writer of a letter was found guilty. However, in each of these cases, the writer, after having sent his letter, offered it as evidence in the pending proceedings.

In the case of *Ex parte Ewell*, 71 Cal. App. 744 [236 Pac. 205], the petitioner sent a contumacious letter to the judge and was later found guilty ''upon the ground that said letter was an attack upon the honor and integrity of the court; that petitioner's part in dictating said letter, having it written by said witness, presenting it through the mail, and afterward injecting it into proceedings on the hearing of said motion, coupled with the language used by petitioner during the hearing of said motion was contemptuous''. So, also, in *Blodgett* v. *Superior Court*, 210 Cal. 1 [290 Pac. 293, 72 A. L. R. 482], the contemner, who wrote a grossly contemptuous letter to the judge, later filed an ''Answer to Contempt Proceedings'' in which he asserted that the judge was disqualified because of bias, and in support of this claim attached a copy of the letter. At the contempt proceeding the judge denied his disqualification and found Blodgett guilty of contempt in respect to the matter contained in the ''Points and Authorities'' and also guilty of a further contempt consisting in the sending of the letter and its presentation in open court at the hearing. This court in affirming the judgment held that the filing of the ''Points and Authorities'' was a contempt ''committed in the presence of the court within the meaning and intent of section 1209 of the Code of Civil Procedure'' and was ''a direct, as distinguished from a constructive, contempt''. As to the second charge, based upon the contemner's production in open court of the scandalous letter which he had sent to the judge, the court held that the production and offer of this letter in open court ''could not but constitute another and more flagrant contempt''.

A case where the facts are more directly in point is *In re Arnold*, 204 Cal. 175 [267 Pac. 316], which was an original

proceeding in this court. The contemner, who was not an attorney in nor a party to a pending election matter before the court, addressed a letter to the justices which, it was held, constituted "an unlawful interference with the proceedings of the court and an attempt to obstruct the course of justice, and, therefore, a contempt of court". Although cited in the Blodgett case, *supra*, as one of direct contempt, the opinion does not classify it as such and the procedure which was followed does not determine how the court defined the offense. So far as the record and opinion shows, the respondent may have been prosecuted for either a direct or indirect contempt because the proceeding was initiated by citation and without affidavit, which is prescribed as necessary for indirect contempts, but the court heard evidence, which is inconsistent with the practice where one is charged with a direct contempt.

However, the question was directly decided by the Supreme Court of the United States in *Cooke* v. *United States*, 267 U. S. 517 [45 Sup. Ct. 390, 69 L. Ed. 767]. The petitioners, who were attorney and client in litigation pending before a federal district judge, addressed a letter, marked personal, to the judge and caused it to be delivered to him at his chambers. The letter charged that the judge evinced bias toward the client in a case just completed and requested the judge to withdraw voluntarily from remaining cases in which the client was interested. The judge caused petitioners to be attached and without giving them an opportunity to obtain counsel or to present matter in defense or extenuation summarily committed them to prison for thirty days.

On *certiorari*, the order of commitment was annulled upon the ground that the procedure followed by the district judge deprived petitioners of their liberty without due process of law. It was said that for obstructions occurring in open court a judge may proceed upon his own knowledge of the facts and punish the offender without further proof and without issue or trial in any form. "When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument. . . . Due process of law, therefore, in the prosecution of contempt, except of that committed

in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation." Although the court did not expressly define the petitioner's act as a direct or constructive one, the reasoning of the opinion makes certain that the decision was predicated upon the ground that the sending of a contumacious letter to a judge is not a direct contempt.

A New York case is to the same effect. It arose because an attorney wrote to a judge criticizing him and characterizing an expected decision as unjust. The court held that, while his conduct was most reprehensible, it was not punishable as a contempt of court under the New York statute, which limited the court's power to punish for misbehavior in the presence of the court; that is, for direct contempts. (*In re Griffin*, 1 N. Y. Supp. 7.) The case of *Ex parte Earman*, 85 Fla., 297 [95 So. 755, 31 A. L. R. 1226], also holds that one who sends such a letter is not guilty of a direct contempt. In an annotation to the report of this case in 31. A. L. R. 1239, it is said "that letters or other written communications sent through the mail to a judge necessarily seem to fall within the class of contempts known as indirect or constructive contempts". Also, a recent case indicating that such conduct constitutes a constructive contempt is *Freedman* v. *State*, (Md.) 6 Atl. (2d) 249.

This rule would seem to be supported by both reason and authority. The power of a court to punish for a direct contempt is based upon the judge's knowledge of the commission of the act by the contemner. A judge usually cannot say with any certainty that a letter or telegram received by him purporting to be signed by a certain person was either written or sent by that person; hence such an act, if contumacious, should be classified as an indirect contempt. So far as the decision of *In re Arnold, supra,* may be said to hold to the contrary, it is overruled.

This determination makes it unnecessary to consider any of the other points presented by the petitioner.

The judgment is annulled.

Waste, C. J., Houser, J., Curtis, J., and Shenk, J., concurred.