**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   NC-14-1235-TaPaJu |
| ) | |
| FAROUK E. NAKHUDA, ) | Bk. No.   14-41156 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| FAROUK E. NAKHUDA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| PAUL MANSDORF, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on February 19, 2015,
at San Francisco, California

Filed – March 2, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Chief Bankruptcy Judge, Presiding

Appearances:    Andrew W. Shalaby of East Bay Law argued for
appellant Farouk Nakhuda; Dennis D. Davis of
Goldberg, Stinnett, Davis & Linchey argued for
appellee Paul Mansdorf.

Before:  TAYLOR, PAPPAS, and JURY, Bankruptcy Judges.

---

[*]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

Chapter 7[1] debtor Farouk E. Nakhuda ("Debtor") appeals from an order granting the ex-parte application of chapter 7 trustee Paul J. Mansdorf ("Trustee") and requiring the Debtor's turnover of bankruptcy estate assets and records and discontinuance of the Debtor's operation of two businesses. He also appeals from two orders denying his subsequent requests to set aside the order.

We AFFIRM the bankruptcy court.

**FACTS**

At the time that he filed a chapter 7 petition, the Debtor operated four laundromats. Two of the laundromats were sole proprietorships owned by the Debtor; according to the Debtor, the other two laundromats were partnerships in which the Debtor was an equal partner.

Before the § 341(a) meeting of creditors, the Trustee learned from Debtor's counsel that the Debtor continued to operate the two sole proprietorship laundromats post-petition. In response, the Trustee advised counsel that continued operations of the laundromats was inappropriate.

At the § 341(a) meeting, the Debtor testified that the laundromat operations (and his independent consulting business) were funded from a single bank account in his name, which he continued to use. He also testified that, notwithstanding the Trustee's earlier communication with counsel, he continued to operate the sole proprietorship laundromats.

The Trustee filed an ex-parte application the next day,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

supported by declaration, seeking an order requiring the Debtor: (1) to immediately cease operations of the two sole proprietorship laundromats; (2) to cease use or consumption of estate assets including cash; and (3) to turn over his bank account balances, keys to the leased properties, and banking records. The bankruptcy court quickly granted the application and entered the requested order ("Order").

Three hours later, the Debtor filed an "Ex-parte Application for Briefing and a Hearing Schedule for Motion to Remove Trustee and Motion to Set Aside 'Turn Over' Order or Direct Turnover to New Trustee." Among other things, the Debtor alleged due process issues under the local and national bankruptcy rules related to the Order. He also sought a stay of the Order pending his motion to remove the Trustee and proposed a briefing schedule and hearing on the Trustee's application. The bankruptcy court promptly entered an order denying the Debtor's ex-parte application.

Days later, the Debtor filed an amended ex-parte application. This time, he asserted that the Order violated the 14th amendment of the U.S. Constitution. Once again, the bankruptcy court promptly entered an order denying the requested relief.

The Debtor timely appealed from the Order and the two subsequent orders denying his request to set aside the Order.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E). We have jurisdiction under

3

28 U.S.C. § 158.[2]

**ISSUE**

Whether the bankruptcy court erred in granting the Trustee's application and entering the Order on an ex-parte basis.

**STANDARD OF REVIEW**

We review a bankruptcy court's interpretation of the Code de novo. Shapiro v. Henson, 739 F.3d 1198, 1200 (9th Cir. 2014).

**DISCUSSION**

**A. The Debtor's belated motion to dismiss the appeal**.

The day after oral argument and the submission of this appeal for disposition, the Debtor moved to dismiss the appeal. The Debtor's resort to this tactic, the timing of the motion, and the reasons alleged for seeking a voluntary dismissal are questionable given that the appeal has been fully briefed, argued and is ready for decision by the Panel. That Debtor's counsel may have discerned, based upon the questions and comments from the Panel at oral argument, that the Debtor's prospects for obtaining relief were not favorable is hardly a reasonable basis to immediately seek dismissal of the appeal. As a result, we deny the motion.

**B. The bankruptcy court did not err in granting the Trustee's requested relief on an ex-parte basis**.

The Debtor argues that the bankruptcy court's grant of

---

[2] The Debtor initially filed a motion seeking a certification of direct appeal to the Ninth Circuit. After the bankruptcy court issued the certificate of readiness, a BAP motions panel considered and denied the motion, based on the Debtor's failure to satisfy the requirements of 28 U.S.C. § 158(d)(2)(A).

4

relief to the Trustee on an ex-parte application violates the due process clause of the 14th Amendment of the U.S. Constitution, as well as Federal Rule of Bankruptcy Procedure 9014. He contends that the Order was unjustified. We disagree because, independent of the Order, the Debtor had a duty under the Code to cease operations of the two sole proprietorship laundromats and to surrender the relevant assets to the Trustee. We conclude that the Trustee sought ex-parte relief on this basis.

**1. Under the Code, the Debtor was not authorized to continue operating the two sole proprietorship laundromats.**

The Debtor disputes that a chapter 7 debtor, as matter of law, must shut down a business and turn it over to the trustee upon filing for bankruptcy. He asserts that the Code is not so "black or white"; we disagree.

A chapter 7 debtor is required by statute to cease operation of a business upon filing for bankruptcy. First, as discussed in more detail below, a debtor has the affirmative duty to surrender all estate property and records to the chapter 7 trustee. See 11 U.S.C. § 521(a)(4). Unauthorized continuing operation of a chapter 7 debtor-owned business and retention of control over its assets is absolutely inconsistent with this statutory mandate.

Further, the Code also makes clear that continued operation, if allowed at all, can only occur by (or in cooperation with) the chapter 7 trustee and only after approval by the bankruptcy court. See 11 U.S.C. § 721 ("The court may authorize the **trustee** to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and

5

consistent with the orderly liquidation of the estate.") (emphasis added). Thus, "[u]nlike in a chapter 11 case, where the Code expressly authorizes the debtor to continue to operate its business, in a chapter 7 case, the bankruptcy court can authorize only the trustee, and **not the debtor**, to operate the debtor's business pursuant to section 721." 6 Collier on Bankruptcy ¶ 721.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) (emphasis added).

Here, the Order merely restated a requirement, that Debtor cease business operations independent of the Trustee, which is already embedded in the Code. Thus, it mattered not whether the Debtor had notice and an opportunity to be heard on the matter as the Order neither created a new obligation nor deprived the Debtor of any existing right.

Even if the Debtor received notice prior to entry of the Order, he lacked standing under § 721 to argue that he be permitted to continue operating the laundromats. See In re Gracey, 80 B.R. 675, 378 (E.D. Pa. 1987), aff'd, 849 F.2d 601 (3d Cir. 1988). Therefore, whether the Debtor was given the opportunity to be heard on this matter was of no consequence.

> **2. The Debtor was statutorily required to surrender to the Trustee the keys to the sole proprietorship laundromats, bank records, and estate funds.**

As already noted, a chapter 7 debtor is required to surrender to the chapter 7 trustee all property of the estate or information related thereto. See 11 U.S.C. § 521(a)(4). Contrary to the Debtor's belief, this duty, is non-negotiable. See generally Brower v. Evans, 257 F.3d 1058, 1068 n.10 (9th Cir.

6

2001) ("Shall means shall.") (internal citation and quotation marks omitted). Moreover, § 521(a)(3) requires that a debtor "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties . . . ."

The Order required only that the Debtor "turn over" undisputed estate assets (or information relating to such assets). There was no dispute that the sole proprietorship laundromats, as reflected in the Debtor's schedules and statement of financial affairs, were property of the estate. See 11 U.S.C. § 541(a); Twenty-Nine Palms Enters. Corp. v. Bardos, 210 Cal. App. 4th 1435, 1449 (2012) (explaining that, in California, a sole proprietorship is not a separate legal entity from its owner). The record also shows that one bank account in the Debtor's name was used for the laundromat operations. As a result, under § 521(a)(4), the Debtor was statutorily required to surrender these assets to the Trustee.

Here, the Trustee merely sought an order requiring the Debtor to comply with his duties under § 521(a)(3) and (a)(4), duties statutorily imposed without necessity of a court order. Thus, once again, it mattered not whether the Debtor received notice and the opportunity to be heard on the Trustee's application. He could not object to the Trustee's appropriate request for physical surrender of either property of the estate or information relating to property of the estate.

In this respect, the Debtor's reference to § 542(a) is inapposite. The Code outlines a clear statutory scheme intended to maximize assets and information supplied to a trustee. In addition to § 521(a)(4), which requires that a debtor surrender

7

assets and information to the trustee, §§ 542 and 543 supply mechanisms for turnover of estate assets and related information. Section 542 relates to turnover by non-custodial entities, while § 543 relates to custodians, as that term is defined by the Code, who hold estate assets. There is no contention that § 543 applied here. And, the Trustee did not rely on § 542.

In sum, the bankruptcy court did not err in granting the Trustee's application on an ex-parte basis.

## CONCLUSION

Based on the foregoing, we AFFIRM.